**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANEAL NAIR, MD as FON B.'s attorney-in-fact<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY and UNITED AIRLINES, INC.,<br><br>Defendants. | Case No. 2:24-cv-09588 (BRM) (MAH)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Aetna Life Insurance Co. ("Aetna") and United Airlines, Inc.'s ("United") (collectively, "Defendants") Motion to Dismiss Aneal Nair's ("Dr. Nair") First Amended Complaint ("FAC"). (ECF No. 13 (the "Motion").) Dr. Nair filed an Opposition (ECF No. 20), and Defendants filed a Reply (ECF No. 21). Having reviewed and considered the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motion is **GRANTED**.

**I.    BACKGROUND**

**A. Factual Background**

For purposes of this motion to dismiss, the Court accepts the factual allegations in the complaint as true and draws all inferences in the light most favorable to Dr. Nair. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114

F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Fon B. ("Patient") held a health insurance plan (the "Plan") (ECF Nos. 8, 8-1) through his employer United under a group insurance contract administered by Aetna (ECF No. 8 ¶ 9). On February 21, 2021, Patient received emergency treatment from Dr. Nair, a medical provider with Northeast Neurosurgical Associates ("Northeast"). (*Id.* ¶¶ 11–12; ECF No. 8-2.) Dr. Nair was not in the network of providers associated with Patient's Plan. (ECF Nos. 8 ¶ 14; 8-3.) The FAC alleges the Plan covered the medical procedure provided by Dr. Nair. (ECF Nos. 8 ¶ 15; 8-4.) Northeast submitted the bill—$136,000.000—for Patient's treatment to Aetna via health insurance claim forms. (ECF Nos. 8 ¶ 16; 8-5.)

On May 23, 2023, and June 16, 2023, Aetna authorized reimbursements to Northeast totaling $1,358.00 for the services rendered to Patient. (ECF No. 8 ¶ 17.) Dr. Nair alleges the $1,358.00 disbursed by Aetna represents an underpayment of $82,292.00 and is out of line with both the Plan and Aetna's internal policies and procedures for administering claims. (*Id.* ¶¶ 18–26.) Northeast appealed Aetna's determination, and Dr. Nair contends all administrative remedies were exhausted. (ECF Nos. 8 ¶¶ 27–28; 8-6.) Dr. Nair alleges Defendants significantly underpaid for Patient's treatment and did not adhere to the terms of the Plan, denying Patient his contractual and statutory benefits. (*Id.* ¶¶ 34–36.)

Dr. Nair alleges Patient is responsible for paying the $82,292.00 owed for the treatment because of Aetna's breach of obligations under the Plan. (ECF No. 8 ¶ 29.) Dr. Nair alleges Patient designated him as his "attorney-in-fact" for purposes of pursuing a claim against Defendants via a Power of Attorney Agreement ("POA"), attached to the FAC. (*Id.* ¶ 30, ECF No. 8-7.) He contends the POA comports with applicable New Jersey law and is a valid instrument. (ECF No. 8 ¶ 31.)

Dr. Nair brings a single cause of action for recovery of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). (*Id.* ¶ 34.) Dr. Nair asks the Court for damages related to past-due contractual benefits from the Plan, attorneys' fees and costs, and other appropriate relief. (*Id.* at Prayer for Relief.)

### B. Procedural History

Dr. Nair filed his initial Complaint in the Superior Court of New Jersey, Law Division, Bergen County on August 28. 2024. (ECF No. 1-1.) The action was removed to this Court on October 10, 2024. (*Id.*) On November 1, 2024, Dr. Nair filed the FAC against Defendants. (ECF No. 8.) On December 20, 2024, Defendants then filed the Motion to Dismiss the FAC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 13.) Dr. Nair filed an Opposition on February 18, 2025 (ECF No. 20), and Defendants submitted a Reply on March 10, 2025 (ECF No. 21).

## II.   LEGAL STANDARD

### A. Rule 12(b)(1)

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1) because standing is a matter of jurisdiction. *Ballentine*, 486 F.3d at 810 (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F. 3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) ("[W]e must not confuse requirements necessary to state a cause of action

3

. . . with the prerequisites of standing.")); *New Hope Books, Inc. v. Farmer,* 82 F. Supp. 2d 321, 324 (D.N.J. 2000).

"Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine*, 486 F.3d at 810 (citing *Warth v. Seldin*, 422 U.S. 490 (1975); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003)). Nevertheless, on a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F. 3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). However, "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage. *Lujan*, 504 U.S. at 561.

Article III "standing consists of three elements." *Spokeo*, 578 U.S. at 338 (citing *Lujan*, 504 U.S. at 560). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (citing *Lujan*, 504 U.S. at 560–61). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id*. (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

As in *Spokeo*, "[t]his case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements." *Id*. at 338 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (quoting *Lujan*, 504 U.S. at 560). A "particularized" injury is one that affects the plaintiff "in a personal and individual way." *Id*. (citations omitted). In addition

to showing particularization, an injury-in-fact must also be concrete. *Id*. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. ("When we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term — 'real,' and not 'abstract.'"). Therefore, concreteness is distinct from particularization. *Id*.

In *Spokeo*, the Supreme Court held intangible injuries can be concrete and, under certain circumstances, the risk of real harm can also satisfy the requirement of concreteness. *Id*. at 341. However, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. As such, a plaintiff may "not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id*. (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")) (additional citation omitted).

### B. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555

5

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III.  DECISION

Defendants raise two main arguments for dismissal of the FAC.[1] Defendants contend (1) Dr. Nair lacks statutory standing because the POA is deficient, and (2) Dr. Nair lacks Article III standing because the FAC does not plausibly allege Patient suffered an injury-in-fact. (ECF Nos. 13 at 18–21, 29–32, 21 at 6–7, 14–16.) In response, Dr. Nair asserts (1) the claim is brought properly on Patient's behalf by Dr. Nair, serving as attorney-in-fact, and (2) there is a redressable injury sufficiently pled to confer Article III standing. (ECF No. 20 at 8–22, 22–24.)

Because the "general rule" is that "a plaintiff in federal court must have Article III standing on the date the lawsuit was commenced," the Court addresses the parties' standing arguments first. *Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

---

[1] Defendants also contend the FAC should be dismissed because it fails to state a plausible claim for benefits under ERISA and because the POA was a sham, designating Dr. Nair as attorney-in-fact as cover for the ineligible Northeast. (ECF No. 13 at 19–20, 25–28.) The Court does not address these arguments because, as discussed *infra*, Dr. Nair lacks statutory standing to pursue the ERISA claim.

### A. Article III Standing

Defendants contend the FAC does not allege Patient suffered an injury-in-fact sufficient to generate Article III standing, even if Dr. Nair may properly represent Patient through the POA. (ECF No. 13-1 at 29–32.) First, they assert the New Jersey Out-of-Network Consumer Protection, Transparency, Cost, Containment, and Accountability Act ("NJNSA") prevents Northeast or Dr. Nair from billing Patient for the medical treatment without first negotiating with Aetna and filing for arbitration with the relevant State of New Jersey department. (*Id.* at 31.) Second, Defendants argue the FAC does not allege Dr. Nair ever billed Patient for the services, threatened to bill, or sued for the monies owed. (*Id.* at 29.)

Dr. Nair contends the FAC plausibly alleges Aetna's denial of benefits due under the Plan caused Patient to be "left 'with a balance of [$82,292.00.]'" (ECF No. 20 at 23 (citing ECF No. 8 ¶ 29).) Therefore, Dr. Nair asserts Patient's alleged injury-in-fact is the $82,292.00 debt, which establishes Article III standing that Dr. Nair may utilize for this suit through the POA. (*Id.*)

"Generally speaking, motions to dismiss on the grounds of a failure to allege an 'injury in fact' implicate constitutional standing principles and thus are predicated on Rule 12(b)(1) rather than Rule 12(b)(6)." *Mario v. Aetna, Inc.*, 221 F.3d 472, 481 n.7 (3d Cir. 2000) (citing *Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175 (3d Cir. 2000)). Courts in this District recognize an injury-in-fact for ERISA claims where a patient is denied benefits allegedly due under an insurance plan and faces potential liability from their provider as a result. *See Abramson v. Aetna Life Ins. Co.*, Civ. A No. 22-05092, 2023 WL 3199198, at *8–9 (D.N.J. Mar. 18, 2023) (denying motion to dismiss where "the [c]omplaint sufficiently allege[d] [the patient] owe[d] $80,200.00 for the out-of-network emergency services rendered . . . ."); *BrainBuilders, LLC v. Aetna Life Ins. Co.*, Civ. A. No. 17-03626, 2024 WL 358152, at *7 (D.N.J. Jan. 31, 2024) (finding "the ongoing threat of a collectable

debt" to be injury-in-fact); *Redstone v. Aetna, Inc.*, Civ. A. No. 21-19434, 2025 WL 842514, at *4–5 (D.N.J. Mar. 18, 2025) (rejecting defendant's similar Article III injury argument).

Here, a concrete, particularized injury exists because the FAC alleges Patient is responsible for paying the $82,292.00 owed for his treatment. (ECF No. 8 ¶ 29.) Courts in this District have accepted similar allegations as sufficient to plead injury-in-fact under ERISA. *See Abramson*, 2023 WL 3199198 at *8–9; *Brainbuilders*, 2024 WL 358152 at *7. Defendants' NJNSA argument is therefore of no moment because standing exists once the Plaintiff is identified as responsible for a cost allegedly covered by an insurance plan, even if they have yet to be formally billed (at which point NJNSA comes into play). *See id.* Accepting the allegations as true, Patient's outstanding debt constitutes a concrete injury sufficient to confer Article III standing. *See Spokeo*, 578 U.S. at 341.

### B. Statutory Standing Under ERISA

A suit under ERISA § 502(a)(1)(B) may be brought by "a participant or beneficiary . . . to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B); *see also N. J. Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). A "participant" is "any employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan[,]" and a "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(7)–(8).

The Third Circuit recognizes derivative standing under ERISA if a third party obtains a valid assignment of benefits from the participant. *See Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 450 (3d Cir. 2018). But derivative standing is foreclosed if the benefit plan contains an unambiguous anti-assignment clause. *See id.* at 449–50; *Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60, 64 (3d. Cir. 2019) (enforcing anti-assignment clause). Nonetheless, a participant under ERISA may "confer on his agent the authority to assert that claim on his behalf" without assigning the interest to the agent. *Am. Orthopedic*, 890 F.3d at 455. Therefore, even where

a benefit plan contains an unambiguous anti-assignment clause, a third party may be able be to assert a participant's claims. *See, e.g.*, *Atl. Neurosurgical Specialists P.A. v. United Healthcare Grp. Inc.*, Civ. A. No. 20-13834, 2022 WL 970317, at *8 (D.N.J. Mar. 31, 2022) (finding sufficient allegations that "the physician plaintiffs are asserting claims as attorneys-in-fact on behalf of the [p]atients, pursuant to duly executed POAs and . . . stat[ing] the specific dollar amount for which each [p]atient was held responsible."); *Abramson,* 2023 WL 3199198 at *8 (same).

As a POA is a contract, its validity as an instrument is governed by the law of the state in which it was executed (here, New Jersey). (ECF No. 8-7 at 6.) *See Leddy v. Harris Corp*, Civ. A. No. 87-4213, 1988 WL 52939, at *2 (D.N.J. June 3, 1988) (quoting *Colozzi v. Bevko, Inc.*, 17 N.J. 194, 202 (1955) ("Validity of a contract is to be determined by the law of the place of contract.")). Without a valid POA, a purported agent lacks statutory standing to pursue an ERISA claim on the participant's behalf. *See Samra Plastic & Reconstructive Surgery v. Aetna Life Ins. Co.* ("*Samra I*"), Civ. A. No. 23-23424, 2025 WL 1792879, at *4 (D.N.J. June 30, 2025).

The parties agree the Plan contains an unambiguous anti-assignment clause. (ECF No. 8, Ex. D. at 26.) Therefore, Dr. Nair may only bring an ERISA claim as Patient's agent if the POA is valid under New Jersey law. *See Samra I*, 2025 WL 1792879 at *4.

### C. POA Validity in New Jersey

The sufficiency of a POA is governed by New Jersey's Revised Durable Power of Attorney Act ("RDPAA"), N.J. Stat. Ann. § 46:2B-1, *et seq.* Pursuant to the RDPAA, "[a] [POA] must be in writing, duly signed and acknowledged in the manner set forth in [N.J. Stat. Ann. §] 46:14-2.1." N.J. Stat. Ann. § 46:2B-8.9. In turn, the statute requires the POA's "maker" to "appear before an officer . . . and acknowledge that it was executed as the maker's own act." N.J. Stat. Ann. § 46:14-2.1(a). "Specified officers are attorneys-at-law, notaries public, county clerks or deputy county clerks, registers of deeds and mortgages or deputy registers, and surrogates or deputy surrogates." *Samra*

10

*Plastic & Reconstructive Surgery v. United Healthcare Ins. Co.* ("*Samra II*"), 768 F. Supp. 3d 661, 669 (D.N.J. 2025) (citing N.J. Stat. Ann. § 46:14-6.1(a)). To "prove" the POA, a witness must similarly "appear before an officer . . . and swear that he or she witnessed the maker of the instrument execute the instrument as the maker's own act." N.J. Stat. Ann. § 46:14-2.1(b). Further, the officer must sign a certificate attesting to several details, including the officer's name and title, the date of execution, whether the maker and witness appeared personally before the officer, and whether the officer was satisfied "the person who made the acknowledgment or proof was the maker of or the witness to the instrument[.]" N.J. Stat. Ann. § 46:14-2.1(c).

In line with N.J. Stat. Ann. § 46:14-2.1(b), courts have found POAs to be deficient for purposes of ERISA standing where the maker's signature was notarized, but the witness's was not. *See Emami v. Aetna Life Ins. Co.* ("*Emami I*"), Civ. A. No. 22-6115, 2023 WL 5370999, at *5 (D.N.J. Aug. 22, 2023) (dismissing ERISA complaint for lack of standing because POA lacked notarized signature of attesting witness); *Emami v. Aetna Life Ins. Co.* ("*Emami II*"), Civ. A. No. 23-03878, 2024 WL 1715288, at *3 (D.N.J. April 22, 2024) (same); *Kayal*, 2024 WL 2954283 at *3 (same); *Samra I*, 2025 WL 1792879 at *4 (same).

The POA here does not meet this requirement of the RDPAA. The POA is notarized by a New Jersey notary public, who certified Patient "personally appeared" in Passaic County, New Jersey, and "executed the document" with "their [own] act and deed, for the uses and purposes therein expressed." (ECF No. 8-7 at 6.) However, the signature of the attesting witness is not notarized (*id*), and an unnotarized witness signature is insufficient to "prove" a POA, *see Emami II*, 2024 WL 1715288 at *3; *Kayal*, 2024 WL 2954283 at *3; *Samra I*, 2025 WL 1792879 at *4. Without a valid POA, Dr. Nair cannot act as Patient's agent to pursue his ERISA claim against Defendants, and he therefore lacks statutory standing. *See Am. Orthopedic*, 890 F.3d at 450.

Accordingly, Defendants' Motion is **GRANTED**.

11

### IV. CONCLUSION

For the reasons set forth above and for good cause having been shown, Defendants' Motion is **GRANTED** and Dr. Nair's First Amended Complaint is **DISMISSED WITHOUT PREJUDICE**. Dr. Nair may file an amended pleading consistent with this Opinion within twenty-one (21) days of the date of this Opinion and accompanying Order. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: July 31, 2025